UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED
Feb 11  1 49 PM '04
U.S. DISTRICT COURT
NEW HAVEN, CONN.

| | | |
|---|---|---|
| DOVER DAVIS | : | CIVIL ACTION NO. |
| *Plaintiff* | : | 3:02-CV-01039 (JBA) |
| | : | |
| v. | : | |
| | : | |
| JERRY C. LAMB and | : | |
| JOHN BEAUREGARD, | : | |
| *Defendants*. | : | February 10, 2004 |

### DEFENDANT LAMB'S REPLY TO PLAINTIFF'S BRIEF IN OPPOSITION TO MOTIONS FOR SUMMARY JUDGMENT

Defendant Jerry Lamb hereby replies to the plaintiff's brief in opposition to Defendant Lamb's Motion for Summary Judgment. Defendant Lamb's reply relies the arguments set forth in the Memorandum of Law In Support of Defendant Lamb's Motion for Summary Judgment, dated October 1, 2003, previously submitted to the court, as well as several exhibits attached thereto.[1]

---

[1] Specifically, Defendant Lamb's reply relies on the following exhibits attached to said Memorandum of Law:
- Exhibit 1, Affidavit of Jerry Lamb, August 29, 2003;
- Exhibit 2, Deposition of Dover Davis, July 30, 2003;
- Exhibit 3, Affidavit of David Trainor, August 28, 2003; and
- Exhibit 4, Plaintiff's Responses to Defendant Jerry Lamb's First Set of Interrogatories and Requests for Production of Documents, May 16, 2003.

1

A. <u>Background</u>[2]

Defendant Jerry Lamb, while in Georgia recruiting minority candidates for the Program, met the plaintiff and encouraged him to apply for admission into the Clinical Data Management Program ("the Program") run by Eastern Connecticut State University ("ECSU"). At that time, Dr. Lamb was ECSU's Dean of Continuing Education and one of three members of the Management Team that managed the Program. The plaintiff applied for admission and was flown, at ECSU's expense, to Connecticut for an interview. The plaintiff was thereafter admitted into the Program and commenced his studies on May 16, 2001. Two months later, because of fears over the possibility of violence by the plaintiff and because the plaintiff lacked the team skills necessary to succeed in the Program, Dr. Lamb and the two other members of the Management Team decided to dismiss the plaintiff from the Program. On July 12, 2001, the plaintiff was officially dismissed. On July 17, 2001, the plaintiff appealed his dismissal from the Program to the Southeastern Connecticut Workforce Investment Board ("Workforce Investment Board").

On August 21, 2001, the plaintiff and ECSU executed a General Release and Settlement Agreement ("the Agreement") to settle any and all issues between them, including and in particular the plaintiff's appeal of his dismissal from the Program. The Agreement contained a general release in favor of ECSU and provided, among other things, that the plaintiff released and discharged Dr. Lamb from any and all claims and causes of action which the plaintiff had, shall have or may have against Dr. Lamb. The

---

[2] These background facts are a condensed version of the facts set forth more fully on pages 1-9 in <u>the Memorandum of Law In Support of Defendant Lamb's Motion for Summary Judgment</u>, dated October 1, 2003.

plaintiff negotiated with assistance of Attorney Sandy Moore. The plaintiff signed this Agreement and acknowledged that he understood the terms of the Agreement and agreed to be bound by those terms.

Pursuant to this Agreement, the plaintiff was required to complete an independent study on or before August 31, 2001 and ECSU was required to make arrangement for the plaintiff's independent study, to provide him with a Certificate following completion of the independent study and to pay him money to cover certain costs incurred. Under the assistance and supervision of Armelde Pitre, a member of the Management Team, the plaintiff completed this independent study as required. As partial fulfillment of its obligations under the Agreement, ECSU made out a check for $1,637.00, date August 24, 2001, made payable to the plaintiff. On August 27, 2001, the plaintiff cashed this check.

On August 29, 2001, the plaintiff announced that he was unilaterally terminating the Agreement because he had not been paid all of the money due him. Although David Trainor, ECSU's Vice-President of Human Resources, personally tried to deliver the Certificate, check and transportation ticket to the plaintiff two times (August 31, 2001 and October 21, 2001), the plaintiff refused to accept these items and instead demanded an internship and payment of an unspecified amount of money to resolve the matter. On December 7, 2001, John Beauregard, Executive Director of the Workforce Investment Board, issued a final decision denying the plaintiff's appeal of his dismissal from the Program.

3

B. <u>The Agreement is Clear and Unambiguous</u>.

Despite the efforts of the plaintiff's counsel to portray the Agreement as ambiguous, the language of the Agreement is clear and speaks for itself.[3] Very simply, the Agreement required ECSU to provide the plaintiff with a Certificate upon completion of his two-week independent study program. The Agreement also required ECSU to reimburse the plaintiff for various expenses incurred during this period of time. The Agreement required ECSU to pay the plaintiff the requisite amount of money by August 31, 2001. Moreover, the Agreement specifically states that ECSU shall "reimburse" the plaintiff for certain expenditures. Because the plaintiff might have decided not to complete the independent study program, it would have been irresponsible for state officials involved with the disbursement of public monies to "reimburse" the plaintiff for expenditures that had not yet been incurred.

In addition, there is no provision in the Agreement for either the plaintiff or ECSU to unilaterally terminate the Agreement. Having apparently decided that he no longer liked the deal that he had struck, the plaintiff attempted to prevent the Agreement from being implemented by refusing to accept the Certificate and check. ECSU made extensive efforts to fulfill its end of the Agreement by repeatedly attempting to deliver the Certificate, check and transportation ticket to the plaintiff. The plaintiff cannot prevent ECSU from performing as required and then claim that it has not performed.

---

[3] A true and accurate copy of the Agreement is appended to Exhibit 3, the Affidavit of David Trainor, which was submitted as part of Defendant Lamb's Motion for Summary Judgment, October 1, 2003.

C. <u>There is Only One Settlement Agreement</u>.

At his deposition, the plaintiff attempted to claim that he signed a second settlement agreement. However, the plaintiff has not produced any evidence of another signed agreement. Despite repeated questions by Defendant Lamb's counsel in the plaintiff's deposition, the plaintiff provided no information or documentation about any such additional agreement. In response to Defendant Lamb's interrogatories and production request, neither the plaintiff nor plaintiff's counsel produced any such document. Moreover, the plaintiff has not produced any witnesses or affidavits to support the existence of such an agreement. The plaintiff has not produced any such document because such a document simply does not exist. The only signed agreement in this case is the Agreement signed on August 22, 2001 by the plaintiff and ECSU.

D. <u>Plaintiff Had Advice of Counsel When Negotiating the Agreement</u>.

As previously discussed, the plaintiff was represented by Attorney Sandy Moore at the time the Agreement was negotiated. In fact, the plaintiff specifically admitted in his response to Defendant Lamb's interrogatories that he was represented by Attorney Moore from late July to August 30, 2001. The Agreement was signed on August 22, 2001, well within the time frame that the plaintiff has admitted that he was represented by counsel.

Although the plaintiff also admitted in his deposition that Attorney Moore did participate in the negotiation of the settlement, the plaintiff appears to claim that Attorney Moore did not represent him in negotiating or signing a second agreement. As discussed above, the plaintiff has not produced any such document because such a document simply

5

does not exist. The only signed agreement in this case is the Agreement signed on August 22, 2001 by the plaintiff and ECSU. As a result, the plaintiff was represented by counsel during the negotiation of the Agreement which contained a release in favor of Defendant Lamb.

E. <u>Plaintiff's Claim for Money Damages is Barred by Doctrine of Qualified Immunity</u>.

As outlined in considerable detail in the <u>Memorandum of Law in Support of Defendant Lamb's Motion for Summary Judgment</u> (pages 23-27), the plaintiff's claim for money damages against Defendant Lamb in his individual capacity is barred by the doctrine of qualified immunity. Under this doctrine, state officials performing discretionary functions are shielded from liability for civil damages if their conduct either did not violate clearly established rights of which a reasonable person would have know or it was objectively reasonable to believe that his acts did not violate such rights.

The plaintiff has made several unfounded allegations regarding racial discrimination with no evidence to support his claims. The plaintiff's reply brief simply restates these allegations with no additional evidence. As previously stated, Defendant Lamb's conduct did not violate any clearly established rights of which a reasonable would have known.

F. <u>Given the Short Time Frame and the Relationship Between the Plaintiff and Defendant Lamb, the Same Actor Inference Supports a Finding of No Racial Discrimination.</u>

As discussed more fully in the <u>Memorandum of Law In Support of Defendant Lamb's Motion for Summary Judgment</u> (pages 20-23), the "same actor" inference

basically provides that where the hirer and firer are the same individual and the termination of employment occurs within a relatively short time following the hiring, a strong inference exists that discrimination was not a determining factor in the decision to dismiss the employee. The plaintiff argues that the "same actor" inference is most properly applied in employment discrimination cases and should not be applied in educational settings. This position fails to appreciate the reasons underlying the same actor inference and ignores the relationship between the plaintiff and Defendant Lamb.

The plaintiff argues that while the employer/employee relationship generally has no fixed duration and may last indefinitely, the course of study in an academic setting rarely exceeds three years in length. However, under this type of analysis, the "same actor" inference would not apply in employment cases where there is a fixed term to the employment. The plaintiff has not cited to any case law which supports this position. Moreover, even if one assumed that such a distinction had merit, the length of time in this case between admitting the plaintiff into the Program was only two months.

It should also be noted that given the volume of applications for admittance to schools of higher education, these institutions frequently are forced to simply react to applications that are submitted by prospective students. That was not the case here. As part of his efforts to attract minority students into the Program, Defendant Lamb personally encouraged the plaintiff several times to apply. Defendant Lamb solicited the plaintiff's resume and arranged for ECSU to pay for his round-trip flight to Connecticut to interview for admittance into the Program. Given the ongoing efforts of Defendant Lamb to encourage the plaintiff to participate in the Program, it is evident that

7

discrimination was not a factor in the plaintiff's dismissal and the application of the "same actor" inference in this case is sound.

G. Conclusion

In conclusion, pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the defendant Jerry Lamb respectfully requests that this Court grant the Motion for Summary Judgment and to dismiss the Plaintiff's claims against him.

JERRY C. LAMB
DEFENDANT

RICHARD BLUMENTHAL
ATTORNEY GENERAL

BY: _____
Michael Sullivan
Assistant Attorney General
Federal Bar No. ct24981
55 Elm Street
P.O. Box 120
Hartford, CT  06141-0120
Tel:  (860) 808-5210
Fax:  (860) 808-5385

**CERTIFICATION**

I hereby certify that on this 10th day of February, 2004, a copy of the foregoing was mailed in accordance with Rule 5(b) of the Federal Rules of Civil Procedure, via first class mail, postage prepaid to:

John Williams, Esq.
Williams and Pattis, LLC
51 Elm Street, Suite 409
New Haven, CT  06510

and to:

June Sullivan, Esq.
Halloran & Sage, LLP
One Goodwin Square
225 Asylum Street
Hartford, CT  06103

Michael Sullivan
Assistant Attorney General

9